**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LISA D. WILLIAMS, <u>et</u> <u>al.</u>,
for themselves and on
behalf of all similarly
situated individuals,

     Plaintiffs,

v.                           Civil Action No. 3:06cv241

LEXISNEXIS RISK
MANAGEMENT INC.,

     Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiffs' Motion to Certify Class (Docket No. 32). For the reasons set forth below, the motion is Granted in part and Denied in part.

**BACKGROUND**

Plaintiffs seek to certify two separate classes, each alleging that LexisNexis Research Management ("LexisNexis") violated a different section of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a et seq. One class is based on claims that LexisNexis violated 15 U.S.C. § 1681k, and the other is based on the alleged violation of 15 U.S.C. § 1681i.

Section 1681k of the FCRA requires that, when a consumer reporting agency ("CRA") furnishes a report to a customer regarding a consumer,[1] and the report contains information on the public record that is "likely to have an adverse effect" upon a consumer's ability to obtain employment, the CRA must "notify" the consumer "at the time" it furnishes the report to the prospective employer. 15 U.S.C. § 1681k(a)(1).[2]   The Federal Trade Commission ("FTC"), which is empowered to administer and enforce the FCRA, see § 1681s(a), has interpreted this requirement to mean that "[a] [CRA] may use first class mail to provide the notice required by [§ 1681k(a)(1)]."   16 C.F.R. part 600 app. § 613(4) (2000).

Section 1681i requires that, when "the consumer" disputes information on file with a CRA and "the consumer notifies the agency directly" of the dispute, the agency must conduct a reinvestigation into the disputed information, and take some action (i.e., record the current status of the item, change the item, or delete the item)

---

[1]     In the argot of the FCRA, "customers" are persons, like employers, who pay a CRA to access consumer reports; "consumers" are individual persons of whom reports are created.

[2]     Alternatively, the CRA may adopt "strict procedures" to ensure that such reports are accurate. 15 U.S.C. § 1681k(a)(2).  That section of § 1681k is not at issue in this litigation, however.

within 30 days.  15 U.S.C. § 1681i(a)(1)(A).  In conducting this reinvestigation, § 1681i (a)(2) requires the CRA to contact the source of the information within five business days, and  § 1681i (a)(5) requires the CRA "promptly" to change the disputed information if the CRA finds that it is inaccurate.  The FTC has interpreted subsection (a)(1) to mean that "[a] [CRA] need not reinvestigate a dispute about a consumer's file raised by any third party, because the obligation under the section arises only where an item of information in his file is disputed by the consumer."  16 C.F.R. pt. 600 § 614(8) (quotation omitted).

Notwithstanding a CRA's obligations under subsection (a)(1), if the CRA "reasonably determines" that the consumer has failed to provide it "sufficient information to investigate the disputed information," it is not required to conduct the reinvestigation.  15 U.S.C. § 1681i(a)(3).  If the CRA decides not to conduct a reinvestigation pursuant to § 1681i(a)(3), however, the CRA must contact the consumer and "identif[y] . . . any information required to investigate the disputed information . . . ."  § 1681i(a)(3)(C)(ii).  The CRA may contact the consumer by means of a standard form.  Id.

### 1. LexisNexis

LexisNexis is a CRA that provides a service called "Securint," which allows employers and other paying customers to research the criminal backgrounds of consumers.[3]  When a customer queries a consumer's record, the Securint system searches its database, and returns information about the consumer.

LexisNexis has developed a procedure which, it argues, puts it in compliance with § 1681k.  When an employer's query turns up a public record that LexisNexis has categorized as "likely to have an adverse effect upon a consumer's ability to obtain employment," see § 1681k(a), a computer program automatically sends that consumer's name and address, along with other information, to a spreadsheet file.   The spreadsheet file is sent to LexisNexis' "Compliance" department, usually at the end of each day. The Compliance department uses a mail-merge system, which merges the information in the spreadsheet onto a letter. The letter contains information required by § 1681k, along

---

[3]    At the time here at issue, it appears that Securint was owned by another company, called Seisint Decision Services, Inc.    Seisint appears to have merged into LexisNexis, and neither party disputes that LexisNexis is exposed to liability for the claims made in the Amended Complaint.    For the sake of simplicity, this Memorandum Opinion refers to LexisNexis as committing the acts, even though the acts at certain times may have been committed by a different entity.

with other information regarding the consumer's rights under the FCRA. This letter is then sent to the consumer, usually, but not always, a day after the LexisNexis customer accessed the consumer's report. Plaintiffs argue that this procedure violates § 1681k because it does not notify the consumer "at the time" the report is furnished to the customer.

When a consumer contacts LexisNexis to challenge its report, LexisNexis has adopted a procedure that, it argues, complies with § 1681i. If the consumer does not provide copies of two forms of identification with the initial request for a reinvestigation, LexisNexis does not begin a reinvestigation immediately, but instead sends the consumer a form requesting that the consumer prove his or her identity by sending LexisNexis photocopies of two forms of identification. If, and when, the consumer replies with copies of two forms of identification, LexisNexis conducts the requested reinvestigation. LexisNexis also declines to conduct a reinvestigation if the consumer has not submitted sufficient information about the dispute to allow LexisNexis to conduct a reinvestigation, or if LexisNexis concludes that the request for reinvestigation is frivolous.

### 2.  The Class Representatives

Telespectrum, Inc. ("Telespectrum") employed all the putative class representatives.  Telespectrum, which used LexisNexis' Securint system as a "customer," decided to conduct background checks on some of its employees.  On February 2, 2005, it entered the class representatives' information into Securint's online system.  Each of the Plaintiffs' records turned up one or more criminal convictions.[4]  As described above, LexisNexis' computer system automatically kicked into action, and LexisNexis mailed the § 1681k letters to the plaintiffs on February 3, the next day.

Telespectrum fired all the plaintiffs because of their criminal records, as reported by Securint.  The plaintiffs testified that they called LexisNexis to request reinvestigations, with varying results.

Two of the plaintiffs (Bennett and Cox) contacted LexisNexis on February 17 and requested a reinvestigation.  LexisNexis sent them the form requesting two kinds of identification.  They completed the form, sent it back to LexisNexis, and LexisNexis completed its reinvestigations on March 11--less than 30 days from the initial contact.

---

[4]   Plaintiffs allege that all of Securint's reports of the representative plaintiffs' criminal records were inaccurate.

Two other plaintiffs (Sanders and Williams) contacted LexisNexis and requested a reinvestigation. LexisNexis sent them the form requesting two kinds of identification. The plaintiffs returned the form after a delay. LexisNexis completed the reinvestigations within 30 days of receiving the completed forms, but more than 30 days from the initial request for reinvestigation.

One of the plaintiffs (Allen) contacted LexisNexis and requested a reinvestigation. LexisNexis sent her the form requesting ID. Allen never returned the form, and LexisNexis never conducted a reinvestigation.

Finally, one of the plaintiffs (Matthews) contacted LexisNexis to complain that her criminal report was incorrect. The LexisNexis representative thought Matthews was requesting a copy of her consumer report, and sent her that instead. LexisNexis did not conduct a reinvestigation.

On these events, Plaintiffs move to certify two classes. Plaintiffs propose to define the class based on violation of § 1681i as,

> All natural persons residing in the United States
> who were the subject of a consumer report
> prepared by Defendant within 2 years prior to the
> filing of this complaint for whom Defendant
> refused to conduct a reinvestigation of a dispute
> until and unless the consumer first filled out
> and returned a specific form furnished and
> demanded by Defendant and/or provided with his or

her   dispute   photocopies   of   two   forms   of
identification.

Plaintiffs propose to define the class based on violation

of § 1681k as,

> All natural persons residing in the United States
> who were the subject of a consumer report
> prepared by Defendant within 2 years prior to the
> filing of this complaint and to whom Defendant
> did not provide notice that it was furnishing a
> consumer   report   on   them   prior   to   or
> contemporaneously with its provision of the
> report.

As to both putative classes, Plaintiffs claim that

LexisNexis violated both § 1681k and § 1681i willfully,

within the meaning of § 1681n.

In a separate count, plaintiffs also claimed, only as

individuals, that LexisNexis had violated § 1681e(b) by

failing to establish and follow reasonable procedures to

assure the accuracy of their reports.  (Amended Complaint

(Docket No. 33) Count I).

## DISCUSSION

Plaintiffs have moved for class certification pursuant

to Fed. R. Civ. P. 23(b)(3).  To be appropriate for

certification,   the   class   must   satisfy   the   four

certification prerequisites of Fed. R. Civ. P. 23(a) and

the certification requirements of Fed. R. Civ. P. 23(b)(3).

## I.   Fed. R. Civ. P. 23(a)—Prerequisites

### a.   Numerosity

The numerosity prerequisite permits class certification only if the proposed class is so numerous that joinder of all members is impracticable.

LexisNexis challenges the proposed classes based on the numerosity prerequisite, claiming that, in reality, the proposed classes only 38 members strong.  These 38 members would appear to be the 38 people, among them the class representatives, who Telespectrum fired.   LexisNexis' counsel stated that LexisNexis makes this argument in order to preserve it for appeal, and the Court does not consider it further here. The numerosity prerequisite appears to be satisfied as to both classes--the § 1681i class has 430 putative members, and the § 1681k class has at least 557 putative members.   These numbers are sufficient to make joinder impracticable.

### b.   Commonality

The commonality prerequisite permits class certification only if there are one or more questions of law or fact common to the class.   To satisfy this prerequisite, there need be only a single issue common to the class.   See Central Wesleyan Coll. v. W.R. Grace & Co.,

143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993).

LexisNexis does not dispute that the putative classes satisfy this prerequisite, and indeed, both putative classes satisfy the commonality prerequisite, as all the putative class members either received a notice pursuant to § 1681k, or contacted LexisNexis to request a reinvestigation under § 1681i. Thus, at least one common issue of fact exists as to each putative class.

### c. Typicality

The typicality prerequisite focuses on the general similarity of the class representatives' legal and remedial theories to those of the proposed class. See Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986). LexisNexis does not dispute that the putative classes satisfy this prerequisite.

As to the § 1681k class, LexisNexis mailed all the putative class representatives the § 1681k notice one day after Telespectrum accessed their consumer reports, and the undisputed evidence shows that it is LexisNexis standard policy to mail the § 1681k notices to all consumers at least one day after their reports are accessed. As to the § 1681i claims, LexisNexis sent all the representative class members a form requesting copies of two forms of

10

identification before LexisNexis began its reinvestigation, and the undisputed evidence is that it is LexisNexis' standard practice not to begin a reinvestigation unless it has evidence of the consumers' identity by way of at least two photocopies of identification documents.[5]

### d.   Adequacy of Representation

The adequacy of representation prerequisite requires the Court to be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). LexisNexis claims that the proposed class does not satisfy the adequacy of representation prerequisite because the class representatives and class counsel have a conflict of interest with the absent members of the class.

This is so, argues LexisNexis, because the class representatives, with class counsel as their individual attorneys, have also asserted a claim against LexisNexis as individuals for violations of § 1681e(b).[6] Plaintiffs agree

---

[5]   Plaintiff Matthews' case presents something of a problem, because LexisNexis may argue that she never requested a reinvestigation in the first place, which would subject her to a unique defense. LexisNexis does not raise this possibility here, however, and the Court declines to consider it at this time. Should it become necessary to do so, the Court will consider the matter later.

[6]   Section 1681e(b) reads, "Whenever a [CRA] prepares a consumer report it shall follow reasonable procedures to

that they assert the § 1681e(b) claim only as individuals, but they argue that they do so because § 1681e(b) claims require a showing of inaccuracy as a threshold matter. Asserting a § 1681e(b) claim for the entire class would render the class-action device useless, note Plaintiffs, because it would require an assessment of whether or not each class member's report was, in fact, inaccurate. Moreover, plaintiffs argue that the assertion of related individual claims does not make them unfit representatives because, while the adequacy prerequisite requires that the class representatives' claims be coextensive with the class members', it does not require that they be identical.

Plaintiffs' argument is correct, as to both classes. The adequacy of representation prerequisite does not require that the interests of the named representative and the absentee class members be identical. See Kamen v. Kemper Fin. Servs., Inc., 908 F.2d 1338, 1349-50 (7th Cir. 1990) rev'd on other grounds, 500 U.S. 90 (1991) (holding that members of a class are never perfectly homogeneous, and differences in incentives among class members are not equivalent to concrete conflicts of interest). Rather, the interest of the representatives and the absent class

---

assure maximum possible accuracy of the information concerning the individual about whom the report relates."

members merely must be coextensive.  <u>See, e.g.</u>, Wm. Moore et al., 5 <u>Moore's Federal Practice</u> § 23.25[2][b][i].  In this case, all the class representatives assert the same claims as the absent class members, so representation is not inappropriate on those grounds.  Adequacy of representation would be a concern if, for instance, the class representatives used the class claims to leverage higher settlements on their individual claims, <u>see id.</u> at § 23.25[2][b][viii], but such issues are not before the Court at this time.[7]

## I.   Fed. R. Civ. P. 23(b)(3)--Criteria

Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(3).  To certify a class under Fed. R. Civ. P. 23(b)(3), it is necessary that questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.

### a. Predominance

To satisfy Fed. R. Civ. P. 23(b)(3)'s predominance requirement, common questions of law or fact must

---

[7]   In its brief, LexisNexis challenged the adequacy of class counsel, but it abandoned that challenge at oral argument.  And, the record shows that class counsel is adequate.

predominate over questions affecting only individual class members. Plaintiffs' class claims are based on two of LexisNexis' standard procedures. As the claims rise and fall on the propriety of these standard procedures, common issues would appear to predominate. Nonetheless, LexisNexis argues that common claims do not predominate, for several reasons.

First, as to both §1681i and § 1681k, LexisNexis argues that certification is inappropriate because individual issues of statutory and punitive damages predominate over common issues. LexisNexis makes this argument relying on the decision in Williams v. Telespectrum, 3:05cv853 slip op. (E.D. Va. June 4, 2007) wherein the Court ruled that individual punitive damages issues predominated in the litigation. That decision is inapplicable to this case. In Telespectrum, statutory and punitive damages were to be tried as class claims, and actual damages were to be tried as individual claims. There, individual punitive damage issues predominated because the plaintiffs' alleged actual damages, which had to be tried individually, were much larger than statutory damages, and thus would permit far larger punitive damage awards if each class member tried their claims individually than if the claims were tried on a class-wide basis, where

they would be measured for due process concerns against statutory damages only.    In this case, by contrast, Plaintiffs do not seek actual damages at all, and if statutory and punitive damages are awarded, they will be divided equally among the class members.    Individual punitive and statutory damages issues therefore do not predominate.

Second, as to both classes, LexisNexis argues that a "willfulness" claim requires individual proof.    It bases this argument on the Supreme Court's recent decision in Safeco Insurance Co. v. Burr, No. 06-84 (June 4, 2007).    In Safeco, the Supreme Court held that "willfulness" under the FCRA is "conduct . . . entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."    Slip op. at 19.    LexisNexis draws from this that Safeco requires two-step analysis--whether the violation occurred, and whether the violation was reckless--and that this analysis requires a court to examine the circumstances of each individual.    Accepting arguendo LexisNexis' characterization that Safeco requires a tiered inquiry, the Court nonetheless fails to see why recklessness requires inquiry into individual circumstances.    In the § 1681i class, LexisNexis adopted a standard procedure to require photocopies of at least two

forms of identification before beginning any inquiry.  In the case of the § 1681k class, LexisNexis adopted a standard procedure not to send notices simultaneously with the access it gave to Plaintiffs' employers.  The Plaintiffs' class allegations charge that these standard procedures violated the FCRA, and that, in adopting these procedures, LexisNexis willfully violated the FCRA.  It is not readily apparent how an inquiry directed at LexisNexis' state of mind in adopting standard procedures is affected by any particular case in which those standard procedures were applied.  Nor does LexisNexis explain why that would be so.

Third, LexisNexis argues that both § 1681i and § 1681k require inaccuracy as a threshold matter.  That would require, says LexisNexis, inquiry into whether each individual class members' inquiry was, in fact, inaccurate. Therefore, argues LexisNexis, those individual inquiries will predominate over common issues.  The argument is incorrect.  As to the § 1681k class, the one decision to discuss an accuracy threshold at any length dealt with another portion of § 1681k, which had to do with the reasonableness of a CRA's procedures to ensure that a report was accurate and up to date.  See <u>Obabueki v. IBM</u>

Corp., 145 F. Supp. 2d 371 (S.D.N.Y. 2001).[8]  In that case, because the court was analyzing the reasonableness of the CRA's procedures, it analyzed them under § 1681e(b).  Under that section, when a report is in fact accurate, the procedure is per se reasonable.  In the § 1681k claims here, by contrast, plaintiffs are claiming that LexisNexis' notice was improper.  The claim therefore is entirely independent of the accuracy of the report.  As to § 1681i, as Plaintiffs noted during the class certification argument, § 1681i imposes obligations on CRAs even where the report is accurate.  See § 1681i(a)(1)(A) (requiring CRA to "record the current status of the disputed information" where information is accurate).  In any event, these classes seek statutory and punitive damages, not actual damages.  Inaccuracy, which is closely connected to any actual damages, would therefore not appear to be relevant.

Fourth, again as to both classes, LexisNexis argues that individual issues of causation would predominate in the litigation.  This argument misapprehends Plaintiffs' theories of relief.  Were Plaintiffs seeking actual

---

[8]    Obabueki dealt with a claim under § 1681k(a)(2), which requires a CRA to "maintain strict procedures designed to insure that [certain public record information] . . . is up to date."  15 U.S.C. § 1681k(a)(2).

damages, LexisNexis' argument would be well-taken. However, Plaintiffs are seeking only punitive and statutory damages, neither of which require a showing of individual harm.  See Owner-Operator Indep. Driver Ass'n. Inc. v. USIS Commercial Servs., Inc., 2006 WL 2164661, *2 (D. Colo. July 31, 2006) ("[A] plaintiff who has proven that the defendant willfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages.").  Thus, whether a LexisNexis violation of the FCRA caused any class member to suffer harm is irrelevant to the litigation.

LexisNexis next focuses on the § 1681i class, and argues that it does not satisfy the predominance requirement, for four reasons.

LexisNexis' first and second arguments focus on the fact that the proposed § 1681i class is actually prosecuting several different theories of liability. First, LexisNexis argues that "common issues do not predominate regarding the use of [LexisNexis]' request for investigation form"; second, "individual issues predominate relating to the sufficiently of the information of the dispute provided by the consumer."  While LexisNexis' arguments are not entirely clear, both arguments do point

to one problem with the § 1681i class as Plaintiffs have currently defined it.

Currently, the proposed § 1681i class is defined to include persons for whom LexisNexis refused to conduct a reinvestigation "until and unless the consumer first filled out and returned a specific form furnished and demanded by [LexisNexis] and/or provided with his or her dispute photocopies of two forms of identification." (emphasis added)  Because of the way § 1681i is structured, this definition includes in the class individuals whose individual claims would predominate over issues common to the class.

Section 1681i(a)(3) permits a CRA to terminate a reinvestigation if it "reasonably determines" that a dispute is frivolous, or if it reasonably determines that it does not have sufficient information about the dispute to conduct a reinvestigation.  In that event, subsection (a)(3) requires the CRA to send the consumer a form. LexisNexis sends out this form if a consumer fails to provide two forms of identification with their initial request for reinvestigation.  However, it also sends out the form if it determines that the dispute is frivolous, or if it determines that the customer has not submitted

sufficient information about the dispute for LexisNexis to conduct a reinvestigation.

Because LexisNexis sends out forms for various reasons, individual issues would predominate in certain circumstances if the class is defined as broadly as Plaintiffs suggest. Individual issue would come to the fore in cases where the consumer did submit copies of two forms of identification with the initial dispute, but where LexisNexis nonetheless sent out the form because it determined pursuant to (a)(3) that the dispute was frivolous or that the consumer had not provided sufficient information. In such cases, the Court would not be addressing LexisNexis' standard procedure of requiring two photocopies of identification documents. Rather, it would be dealing with the question of whether, under subsection (a)(3), it was "reasonable" for LexisNexis to determine either that a particular dispute was frivolous, or that a particular consumer had provided insufficient information to conduct an investigation. This would require the Court to investigate the facts of each individual's case, and to decide whether LexisNexis made a "reasonable" determination.[9] For such putative class members, individual

---

[9]    Not only would such a class require investigation into individual issues, the plaintiffs likely would have to

issues, rather than common issues, would predominate, and certifying a class that included plaintiffs pressing such claims would be inappropriate under Rule 23(b)(3)'s predominance requirement.

Therefore, the § 1681i class must be defined to include only those individuals for whom LexisNexis refused to conduct an investigation until the consumer provided two forms of identification. The issues in such a class would be focused on whether LexisNexis violated the law when it implemented that standard policy. So limited, issues common to the class clearly predominate over issues unique to individual members of the class. The § 1681i class will be so defined in the forthcoming class certification order.

While this aspect of LexisNexis' first two arguments regarding the § 1681i class is correct, LexisNexis is incorrect to the extent that it argues that individual issues predominate regarding claims based on the two-types-of-identification requirement alone. If the class is defined as those individuals for whom LexisNexis refused to conduct a reinvestigation until the consumer provided two

---

advance different theories of liability for different class members. This indicates that common issues would not predominate in the class litigation. See Wm. Moore et al., 5 Moore's Federal Practice § 23.45[1] (noting that courts assess predominance, inter alia, by determining whether "[t]he same theory of liability is asserted by . . . all class members . . . .").

forms of identification, common issues, not individual issues, predominate.  In such a case, plaintiffs would have a single, common theory of liability (i.e., that LexisNexis' standard procedure of requiring two forms of identification violated the FCRA).  The only individual issue of proof would be whether an individual plaintiff sent two forms of identification with their original reinvestigation request, and whether LexisNexis refused to conduct an investigation until the consumer provided two forms of identification.  This is a question susceptible to ready judicial determination, and therefore is not an individual issue that would threaten to overwhelm the class litigation.  Thus, LexisNexis' first and second arguments are correct and well-taken as they relate claims outside of the "two forms of identification" requirement, but incorrect as they relate to the "two forms of identification" requirement itself.

Third, LexisNexis claims that common issues do not predominate because, in each case, the Court will have to determine whether the identification documents that each individual class member provided were sufficient, or not.  That argument misses the mark.  The common question here is whether LexisNexis was permitted to insist on at least two forms of identification.  Individuals who submitted less

than two forms of identification fall squarely into the class.  Whether an individual submitted two forms of identification is a question readily determinable as to each class member, and would not be likely to predominate in the litigation.

Fourth, LexisNexis argues that, because some of the class members will have had their investigations completed within 30 days of their initial request while others will not have, common issues do not predominate because there effectively would be two sub-classes of plaintiffs who will have to assert different theories of liability.  This argument is incorrect because Plaintiffs have asserted a single theory of liability to cover both circumstances:  in refusing to conduct a reinvestigation in response to the initial request, LexisNexis ignored a request for a reinvestigation, and forced the class members to make a second "request" for a reinvestigation, via the forms it sent them.  Under this theory, LexisNexis violated its obligations under the FCRA as to the first request, regardless of how quickly an inquiry was eventually conducted.  Because neither "group" relies on different theories of liability, common issues predominate. Therefore, the fact that LexisNexis completed some

investigations within 30 days of the initial request does not defeat the predominance requirement.

### b. Superiority

The proposed classes involve at least hundreds, perhaps thousands, of proposed class members pursuing identical, fairly small claims for relief, who, if required to proceed individually, probably would not assert their claims. The class action device therefore appears to be a superior means of resolving their disputes. See In re Kirchner Med. Corp. Sec. Litig., 139 F.R.D. 74, 80 (D. Md. 1991) (finding class action superior when class consisted of numerous members with claims too small to warrant individual suits).

LexisNexis argues that nonetheless, when statutory and punitive damages are grossly out of proportion with the actual damages suffered by any class member, class action is an inappropriate vehicle for resolving the disputes. LexisNexis bases this argument on Ratner v. Chem. Bank of N.Y. Trust Co., 54 F.R.D. 412, 416 (S.D.N.Y. 1972), which held that the class action device was not inferior where no class member had been harmed, and the defendant faced "a horrendous, possibly annihilating punishment. . . ." 54 F.R.D. at 416. That position is unpersuasive. First, LexisNexis does not support its position with evidence. It

24

has not provided evidence estimating what the proposed classes are likely to recover, and it has not provided evidence about how such a recovery would affect its financial position.

Furthermore, the legal premise for LexisNexis' argument is without merit. As Judge Easterbrook of the United States Court of Appeals for the Seventh Circuit recently put it when addressing similar concerns, "it is not appropriate to use procedural devices to undermine laws of which a judge disapproves. . . . While the [FCRA] remains on the books, . . . it must be enforced rather than subverted. An award that would be constitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified." Murray v. GMAC Mortgage, 434 F.3d 948, 953-54 (7th Cir. 2006).

Indeed, Congress created two separate sets of remedies to provide relief from CRAs' violations of the FCRA. If a CRA was found to have violated the statute negligently, a plaintiff could recover actual damages only. However, if a CRA was found to have violated a statute willfully, Congress provided that a plaintiff could recover both statutory and punitive damages, regardless of any actual damages the plaintiff may have suffered. Furthermore, Congress could have, but did not, forbid class actions

based on statutory and punitive damages alone. Provided that these remedies are constitutional, the Court must enforce them. For these reasons, the Court finds LexisNexis' position unpersuasive. The damages awarded against it in either class action, if any, may turn out to be excessive, but, as the Murray decision suggests, that is an issue with which the Court may not deal at this time.

In short, both classes that Plaintiffs seek to have certified represent large groups of individuals with common claims, who would be unlikely to prosecute litigation on their own. The class action device is therefore the superior device for resolving these claims.

## CONCLUSION

For the reasons set forth above, the Court finds that both the proposed class claiming violation of § 1681k satisfies both Rule 23(a) and Rule 23(b)(3).

It further finds that the proposed class claiming violation of § 1681i satisfies the prerequisites of Rule 23(a). The Court finds that as defined by the plaintiffs, the § 1681i class does not satisfy the predominance requirement of Rule 23(b)(3), but that a more limited class, as set forth above, does satisfy the predominance requirement. Finally, the Court finds that the § 1681i

class satisfies the superiority requirement of Rule 23(b)(3).

An order granting class certification in part and denying class certification in part shall issue consistent with this opinion.

The Clerk is directed to send a copy of the Memorandum Opinion to all counsel of record.

_____/s/_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 23, 2007